**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**XAVIER PARKER,**                                                **Case No.**

Plaintiff,


v.                                                                              **JUDGE:**



**DOUGLAS A. COLLINS,**
Secretary of Veterans Affairs,
in his official capacity,

Defendant.


**COMPLAINT AND JURY DEMAND**


**I. JURISDICTION AND VENUE**

1. Plaintiff Xavier Parker brings this civil action against the Secretary of Veterans Affairs, in his official capacity, for disability discrimination, failure to provide reasonable accommodation, retaliation for protected EEO activity, hostile work environment, and constructive discharge under Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 791 and 794a, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16. As part of these claims, Plaintiff further alleges that, after receiving notice of Plaintiff's harassment complaints, Defendant failed to

conduct a prompt and effective anti-harassment response, failed to separate Plaintiff from the alleged harasser, and failed to take corrective action reasonably calculated to stop the harassment.

2. This Court has jurisdiction over Plaintiff's Title VII claims under 42 U.S.C. §§ 2000e-5(f)(3) and 2000e-16(c), and over Plaintiff's Rehabilitation Act claims under 29 U.S.C. § 794a(a)(1) and 28 U.S.C. § 1331.

3. Plaintiff exhausted his administrative remedies through the federal-sector EEO process, an appeal to the Equal Employment Opportunity Commission Office of Federal Operations ("OFO"), and a timely request for reconsideration.

4. OFO denied reconsideration on February 12, 2026, in Request No. 2025004593, expressly advising Plaintiff of his right to file a civil action within 90 days. Plaintiff received that denial on February 12, 2026, and brings this action within 90 days of receipt.

5. This civil action is brought de novo following administrative exhaustion. The factual allegations in this Complaint track the substance of the administrative record.

6. Venue is proper in the Northern District of Ohio under 42 U.S.C. § 2000e-5(f)(3) because Plaintiff's duty station and the place where he would have worked but for the discrimination and retaliation was Aurora, Ohio, Plaintiff worked as a virtual employee based in Aurora, Ohio, and Plaintiff resides in this District.

## II. PARTIES

7. Plaintiff Xavier Parker is a veteran, a 100% disabled veteran, and a former employee of the United States Department of Veterans Affairs. Plaintiff resides in Summit, Ohio.

8. Plaintiff has PTSD and related mental-health conditions that were diagnosed in or about 2005 through 2018.

9. At all relevant times, Plaintiff was a qualified employee able to perform the essential functions of his position with reasonable accommodation.

10. Defendant Douglas A. Collins is the Secretary of Veterans Affairs and is sued in his official capacity only. His principal office is 810 Vermont Avenue, N.W., Washington, D.C. 20420.

11. The Department of Veterans Affairs was Plaintiff's employer for the events alleged in this Complaint.

### III. FACTUAL ALLEGATIONS

12. Plaintiff began working for the Department of Veterans Affairs in or about 2009.

13. Over time, Plaintiff advanced to a GS-201-13 Supervisory Human Resources Specialist position in the Veterans Health Administration ("VHA").

14. From approximately 2013 through 2023, Plaintiff received strong performance ratings, including ratings no lower than an Outstanding.

15. In or about February 2023, Plaintiff was non-competitively reassigned to a GS-201-13 Human Resources Specialist position in the Veterans Benefits Administration ("VBA"), Human Capital Services ("HCS"), Office of Staff Operations ("OSO"), with duty station in Aurora, Ohio, as a virtual employee.

16. Plaintiff's immediate supervisor in VBA was Derrick Cooley ("Supervisor 1"). Plaintiff's second-line supervisor was Maurice Sloan ("Supervisor 2").

17. The transfer was represented to Plaintiff as a career reassignment that would continue Plaintiff's career status.

18. On or about March 10, 2023, Plaintiff's appointment type was changed from career or reassignment status to a term or provisional appointment under the 30% or more disabled

veteran authority, without proper notice, without Plaintiff's consent, and without the usual Statement of Understanding.

19. Starting in or about April 2023, Supervisor 1 initiated a pattern of heightened scrutiny, discipline, and adverse actions against Plaintiff.

20. On April 5, 2023, Supervisor 1 charged Plaintiff with AWOL even though Plaintiff had timely requested sick leave by text message. Supervisor 1 later informally pulled the AWOL charge without issuing a written rescission.

21. On April 6, 2023, Supervisor 1 issued written counseling to Plaintiff for failure to complete TMS and LinkedIn training on time, despite known access problems to the training system and prior communications about those technical issues.

22. On April 20, 2023, Supervisor 1 issued Plaintiff a mid-year review only about 43 days after Plaintiff received performance standards, even though VA policy required a substantially longer period (90 days) on standards before a rating.

23. On April 27, 2023, Supervisor 1 placed Plaintiff on a Performance Improvement Plan ("PIP") less than 90 days after Plaintiff was placed on standards.

24. The PIP misused a non-critical element relating to professional development and mischaracterized Plaintiff's standards in a manner that did not comply with OPM and VA requirements for objective and measurable performance standards.

25. On May 19, 2023, Supervisor 1 removed Plaintiff's workload and customer-service duties, including HRL tickets and customer meetings, for non-performance-based reasons, materially diminishing Plaintiff's responsibilities and career opportunities.

26. On May 23, 2023, Plaintiff requested a reasonable accommodation because Supervisor 1's conduct was aggravating Plaintiff's PTSD and anxiety. Plaintiff requested reassignment to a different supervisor as an accommodation.

27. On or about May 25, 2023, the Reasonable Accommodation Coordinator, Colleen Vonderhaar, informed Plaintiff that VBA would not grant accommodations based on supervisory conflicts as a matter of policy, cited one EEOC decision as justification, and treated such requests categorically as undue hardship instead of conducting an individualized assessment.

28. Although Plaintiff clearly requested reasonable accommodation on May 23, 2023, the Agency did not meaningfully engage in the interactive process and instead directed Plaintiff to report harassment elsewhere. Plaintiff was not given a fair opportunity to pursue accommodation for his disability.

29. On May 30, 2023, Supervisor 1 publicly announced to the team which employees had been interviewed for a GS-14 Lead HR Liaison position. Plaintiff was the only HR Liaison who applied and was not interviewed. Co-workers then questioned Plaintiff about why he was not considered, causing embarrassment and reinforcing that Plaintiff had been singled out.

30. While on the disputed PIP, Plaintiff applied for the GS-14 Lead HR Liaison Consultant position. Every other HR Liaison on the team who applied was interviewed, but Plaintiff was not. Management later asserted that Plaintiff was denied an interview because he was on a PIP.

31. On June 6, 2023, Plaintiff was admonished for being late to or missing a rescheduled meeting that was set with very short notice and overlapped Plaintiff's lunch period and another meeting, despite the lack of prior notice and Plaintiff's attendance at other related meetings.

32. On June 15, 2023, Plaintiff formally initiated an EEO and ORM complaint alleging hostile work environment and harassment by Supervisor 1. This was protected EEO activity.

33. On June 16, 2023, Supervisor 1 issued Plaintiff an admonishment for being late to a meeting (May 15, 2023) while ignoring mitigating circumstances and co-worker statements that Plaintiff had been conducting training for other staff at the time.

34. On July 28, 2023, before the end of the 90-day PIP period, Supervisor 1 advised Plaintiff that he had failed the PIP based essentially on a single admonishment, despite Plaintiff's documented improvement in training completion, meeting timeliness, and HRL ticket metrics.

35. On or about June 15, 2023, July 28, 2023, and again on August 9, 2023, Plaintiff contacted VA's Anti-Harassment/Harassment Prevention team seeking relief from ongoing harassment by Supervisor 1. Plaintiff was told multiple times that he could not file a harassment claim unless the allegations involved physical and/or sexual harassment. On August 9, 2023, in his fourth attempt to obtain relief, Plaintiff again requested reassignment to a different supervisor because of the ongoing harassment and the pending EEO complaint.

36. Within hours on August 9, 2023, Supervisor 1 notified Plaintiff that he would be terminated effective August 11, 2023, allegedly for performance reasons based on PIP failure.

37. On August 10, 2023, Plaintiff filed an appeal with the Merit Systems Protection Board challenging the termination as wrongful.

38. On August 11, 2023, VA rescinded the termination due to procedural error but did not restore Plaintiff's prior duties. Instead, Plaintiff was told his workload would not be reinstated and that he would be assigned only special projects, which isolated Plaintiff from the team and materially diminished his position.

39. After the rescinded termination, Plaintiff's requests to be reassigned away from Supervisor 1 and to have the harassment investigated were denied or ignored.

40. Defendant had notice of Plaintiff's harassment allegations no later than June 28, 2023, when management became aware that Plaintiff had contacted the Office of Resolution Management ("ORM") concerning allegations of discrimination and harassment.

41. Under VA Handbook 5979, management officials who receive notice of harassment allegations are required to promptly address the allegations, consider interim intervention measures such as separating the individuals when appropriate, protect the reporting employee from retaliation, and provide written follow-up regarding the outcome of the inquiry or factfinding.

42. Despite that notice and those requirements, Defendant did not take prompt and effective corrective action reasonably calculated to stop the harassment. Defendant did not separate Plaintiff from Supervisor 1, did not provide Plaintiff with meaningful interim protection, and did not meaningfully address Plaintiff's request to be reassigned away from the alleged harasser.

43. Instead, management consulted internally with Labor and Employee Relations and ORMDI, reached a conclusory determination that reassignment was not warranted and that no discrimination or harassment was apparent, and denied Plaintiff's request without meaningful engagement with Plaintiff regarding his safety, working conditions, or need for protection.

44. Management also failed to provide Plaintiff the prompt and effective follow-up contemplated by VA's Harassment Prevention Program procedures and allowed Plaintiff to remain under the same supervisor while the challenged conduct continued.

45. Defendant's failure to take prompt and effective action after receiving notice of Plaintiff's harassment allegations contributed to the continuation of the hostile work environment and to Plaintiff's eventual constructive discharge.

46. On September 11, 2023, VA approved Plaintiff's FMLA leave due to hostile work environment.

47. Plaintiff used approximately 190 hours of leave because of the hostile environment and worsening mental-health symptoms.

48. On October 20, 2023, Plaintiff resigned from VBA and transferred to the Food and Drug Administration as a GS-13 Management Analyst.

49. As a result of that transfer, Plaintiff took an approximate $18,000 pay reduction (annually) and lost approximately 15 years of VA seniority and associated benefits.

50. Plaintiff transferred because he believed he had no reasonable option other than to leave the hostile and retaliatory environment at VBA.

51. The Agency issued Final Agency Decisions in or about March 2024 on Plaintiff's constructive-discharge complaint and on July 22, 2024, on the merits, finding no discrimination.

52. Plaintiff appealed to OFO, which affirmed the Agency's decision on August 27, 2025, in Appeal No. 2024004726.

53. Plaintiff then timely requested reconsideration. OFO denied reconsideration on February 12, 2026, in Request No. 2025004593.

54. During the administrative investigation, the EEO investigator requested numerous documents from the Agency, but the Agency did not meaningfully respond to those requests or produce the requested materials in full.

55. Plaintiff has been damaged by Defendant's acts and omissions, including loss of pay, loss of benefits, emotional distress, reputational harm, and career harm.

## IV. COUNT I – DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE

56. Plaintiff incorporates Paragraphs 1 through 55 by reference as if fully restated here.

57. Plaintiff is an individual with a disability within the meaning of the Rehabilitation Act, including PTSD and related mental-health conditions.

58. Defendant knew or should have known of Plaintiff's disability, including through Plaintiff's service-connected status, personnel records, and Plaintiff's request for reasonable accommodation.

59. Plaintiff was qualified to perform the essential functions of his position, with or without reasonable accommodation.

60. Plaintiff requested reasonable accommodation on May 23, 2023, including reassignment to a different supervisor because Supervisor 1's conduct was aggravating Plaintiff's PTSD and anxiety.

61. Defendant failed to meaningfully engage in the interactive process, failed to conduct an individualized assessment of Plaintiff's accommodation request, and instead directed Plaintiff to other processes rather than providing a fair accommodation review.

62. Defendant also subjected Plaintiff to adverse employment actions, including discipline, the disputed PIP, loss of duties, denial of interview opportunities, attempted termination, continued isolation after rescission of the termination, and constructive discharge.

63. Defendant's acts and omissions were motivated by Plaintiff's disability and violated Section 501 of the Rehabilitation Act, 29 U.S.C. § 791, as enforced through 29 U.S.C. § 794a(a)(1).

## V. COUNT II – RETALIATION FOR PROTECTED EEO ACTIVITY

64. Plaintiff incorporates by reference Paragraphs 1 through 63 as if fully restated here.

65. Plaintiff engaged in protected activity when he requested reasonable accommodation, initiated EEO and ORM counseling and complaint activity on or about June 15, 2023, participated in harassment reporting processes, and opposed conduct that he believed to be discriminatory and retaliatory.

66. After Plaintiff engaged in protected activity, Defendant, through Plaintiff's supervisors and responsible officials, subjected Plaintiff to materially adverse actions, including additional admonishments, continuation and misuse of the disputed PIP, denial of interview opportunities, notification of termination within hours of Plaintiff's August 9, 2023, reassignment request, post-rescission isolation through removal of duties, and constructive discharge.

67. The timing, pattern of escalation, and deviations from established policy support a causal connection between Plaintiff's protected activity and the adverse actions taken against him.

68. Defendant's actions would dissuade a reasonable employee from engaging in protected EEO activity.

69. Defendant retaliated against Plaintiff for engaging in protected activity in violation of Title VII, 42 U.S.C. § 2000e-16, and the Rehabilitation Act, 29 U.S.C. § 791.

## VI. COUNT III – HOSTILE WORK ENVIRONMENT AND CONSTRUCTIVE DISCHARGE

70. Plaintiff incorporates by reference Paragraphs 1 through 69 as if fully restated here.

71. Plaintiff was subjected to unwelcome harassment and a pattern of hostility that included heightened scrutiny, unwarranted AWOL charging, counseling and admonishments, a premature and defective PIP, removal of duties, public embarrassment concerning the GS-14 interview process, denial of reassignment, failure to address harassment reports, attempted termination, and isolation after the rescinded termination.

72. The hostile conduct was based on Plaintiff's disability, Plaintiff's requests for accommodation, and Plaintiff's protected EEO activity.

73. The conduct was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment.

74. Defendant knew or should have known of the hostile work environment and failed to take prompt and effective remedial action.

75. By September 2023, Plaintiff's working conditions had become intolerable, as reflected by Plaintiff's approved FMLA leave, substantial use of leave, worsening symptoms, loss of duties, and lack of meaningful relief from the Agency.

76. On October 20, 2023, Plaintiff resigned and transferred to another agency because a reasonable person in Plaintiff's position would have felt compelled to do so. Plaintiff therefore was constructively discharged.

77. Defendant's conduct violated Title VII, 42 U.S.C. § 2000e-16, and the Rehabilitation Act, 29 U.S.C. §§ 791 and 794a.

## VII. PRAYER FOR RELIEF

78. Declare that Defendant violated Title VII and the Rehabilitation Act as alleged in this Complaint.

79. Award Plaintiff back pay, front pay or other equitable monetary relief as appropriate, lost benefits, and the pay differential between Plaintiff's VA position and Plaintiff's FDA position, together with all lost seniority-related benefits.

80. Award Plaintiff full make-whole equitable relief, including placement into the GS-14 Lead HR Liaison Consultant position Plaintiff would have obtained absent Defendant's unlawful conduct, or, if that position is unavailable or such placement is not feasible, placement into a substantially equivalent GS-14 position with the same pay, status, promotional potential, and benefits.

81. Award Plaintiff all compensation, benefits, retirement-related contributions, leave restoration, and other employment rights associated with the GS-14 position Plaintiff would have occupied absent discrimination, retaliation, and failure to accommodate, to the extent permitted by law.

82. Award compensatory damages for emotional distress, pain and suffering, inconvenience, and other non-pecuniary losses to the extent allowed by law.

83. Order equitable relief, including expungement of disciplinary and performance records arising from the challenged actions, correction of personnel records, and injunctive relief requiring proper reasonable-accommodation procedures, harassment-prevention compliance, and anti-retaliation compliance.

84. Award Plaintiff his costs and reasonable attorney's fees as allowed by law.

85. Award pre-judgment and post-judgment interest as permitted by law.

86. Grant such other and further relief as the Court deems just and proper.

## VIII. JURY DEMAND

87. Plaintiff demands a trial by jury on all claims so triable.

Respectfully submitted,

/s/ Lawrence Mays
Bar No. 0038288
Law Offices of Lawrence Mays
29325 Chagrin Blvd., Suite 305
Pepper Pike, Ohio 44122
Phone: (216) 208-1287
Fax: (216) 831-9526
Email: Lawrence.Mays@lmayslaw.com
Counsel for Plaintiff

May 8, 2026